UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ROGER GLIDWELL, JR., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>AUTONEUM NORTH AMERICA, INC.,<br><br>Defendant. | Case No. 24-cv-12805<br><br>Honorable Robert J. White |

**ORDER DENYING PLAINTIFFS' MOTION FOR COURT-FACILITATED NOTICE TO POTENTIAL OPT-IN PLAINTIFFS (ECF No. 50)**

Named Plaintiffs Roger Glidwell, Jr. and Amy Kelly sued Defendant Autoneum North America, Inc. (Autoneum) based on Autoneum's failure to pay overtime wages in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *eq seq*. (FLSA). (ECF No. 42). Presently before the Court is the Named Plaintiffs' motion for court-facilitated notice to potential opt-in plaintiffs. (ECF No. 50). Autoneum opposed the motion. (ECF No. 62). For the reasons explained below, the Court will deny the motion.

## I. Background

Autoneum produces automobile materials, components, and systems and operates facilities throughout the United States. (ECF No. 42, PageID.193). Glidwell worked as a maintenance technician at Autoneum's manufacturing/production facility in Bloomburg, Pennsylvania, (*id.* at PageID.191); Kelly worked as a mold operator at Autoneum's Norwalk, Ohio facility, (*id.*). The Named Plaintiffs brought this FLSA action on behalf of themselves and similarly situated employees. (*Id.* at PageID.187). The Named Plaintiffs' motion defined potential opt-in plaintiffs as "[a]ll current and former hourly, non-exempt production/manufacturing employees of Defendant Autoneum North America, Inc. who worked at any of Defendant's manufacturing/production facilities and were paid for at least forty (40) hours in any workweek beginning October 24, 2021 and continuing through the final disposition of this case." (ECF No. 50, PageID.342–43).

So far, individuals that work or worked at facilities in (1) Norwalk, Ohio, (2) Oregon, Ohio, (3) Aiken, South Carolina, (4) Bloomsburg, Pennsylvania, and (5) Jeffersonville, Indiana have opted in as plaintiffs to the action. (*Id.* at PageID.192).[1]

[1] The Named Plaintiffs also identified an Autoneum facility in Duncan, South Carolina in their motion, but did not indicate that plaintiffs had opted in from that location yet. (ECF No. 50, PageID.343). To note, Autoneum does not own the

The Court will refer to the Named Plaintiffs and the Opt-in Plaintiffs collectively as "Plaintiffs."

The Named Plaintiffs alleged that Autoneum's companywide policy resulted in Plaintiffs not receiving compensation for all time worked. (*Id.* at PageID.200–01). That is, the companywide policy requires hourly, non-exempt employees to clock in and out each day using Autoneum's timekeeping system. (*Id.* at PageID.198–99). Once the Plaintiffs clocked in, they performed mandatory work such as donning personal protective equipment (PPE) and participating in pre-shift meetings where they received work assignments and discussed safety issues and production goals, among other activities. (*Id.* at PageID.199–200). This mandatory work occurred prior to the scheduled "start" of the Plaintiffs' shifts. (*Id.*). Similarly, after their shift "ended," but before Plaintiffs clocked out, Autoneum expected them to continue working up through and until they were relieved by the incoming shift's employees. (*Id.* at PageID.201–02).

According to the Named Plaintiffs, Autoneum, through its companywide policy, consistently, willfully, and intentionally failed to pay hourly employees overtime compensation for the pre- and post-shift work. (*Id.* at PageID.198). That

---

Norwalk facility or the Duncan facility. (ECF No. 62-2, PageID.542). Instead, Borgers USA Corp. owns the Duncan facility and Borgers Ohio, Inc. owns the Norwalk facility. (*Id.*).

is, Autoneum would round, edit and otherwise manipulate the Plaintiffs' start and stop times despite using a timekeeping system that records exactly when employees punch in and out each day. (*Id.* at PageID.202). Plaintiffs received payment for their shift time, as calculated by Autoneum, but not for the total time worked; Autoneum did not compensate Plaintiffs for the time-and-a-half owed for their overtime, pre-shift work. (*Id.* at PageID.202–04).

The Court previously dismissed the Named Plaintiffs' state law claims. (ECF No. 53, PageID.434–38). Only the FLSA claim remains. (*Id.* at PageID.438–40). In the present motion, the Named Plaintiffs asked the Court to facilitate notice to potential opt-in plaintiffs. (ECF No. 50, PageID.360). That is, the Named Plaintiffs sought the Court's authorization to send a proposed notice and consent to join form to all potential opt-in plaintiffs. (*Id.*). Autoneum opposed such notice. (ECF No. 62).

## II. Legal Standard

"[F]or a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves." *Clark v. A&L Homecare and Training Ctr., LLC*, 68 F.4th 1003, 1011 (6th Cir. 2023) (quoting *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 554 (6th Cir. 2021)). The "strong likelihood" standard "requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." *Clark*, 68 F.4th at 1011.

## III. Analysis

The Named Plaintiffs argued that their evidence establishes a "strong likelihood" that potential opt-in plaintiffs are "similarly situated workers . . . subject to the same FLSA-violating Time Rounding Policy." (ECF No. 50, PageID.357). Thus, the Court should facilitate notice to potential opt-in plaintiffs. (*Id.* at PageID.358). By "Time Rounding Policy," the Named Plaintiffs meant Autoneum's companywide policy whereby it paid employees by the "scheduled 'start' and 'end' time of their shifts." (*Id.* at PageID.342).

Autoneum disagreed that the Named Plaintiffs satisfied the strong likelihood standard. (ECF No. 62, PageID.520–22). Rather, the evidence presented is insufficient to overcome the inconsistencies among the various Autoneum plants identified in the amended complaint and in the hourly employees' roles at said plants. (*Id.*). Likewise, some of the evidence presented suffers from defects that render it irrelevant here. (*Id.* at PageID.523–25).

The Court finds that Autoneum did not meet the strong likelihood standard. As explained further below, the Court is not convinced that the potential opt-in plaintiffs are similarly situated for purposes of facilitating notice. The Named Plaintiffs' evidence, when compared to the identified differences in each plant's policies, is insufficient to suggest that Autoneum had a companywide policy, implemented through the Time Rounding Policy, to underpay employees. The

Court's doubt is further compounded by certain shortcomings in the Named Plaintiffs' evidence. The Court will therefore deny the motion.

**A. The Evidence Fails to Establish that Potential Opt-In Plaintiffs are Similarly Situated.**

The Named Plaintiffs did not show by a strong likelihood that potential opt-in plaintiffs are similarly situated. The dissimilarities across plants, and the effect those dissimilarities have on the present litigation, do not support court-facilitated notice.

"Whether other employees are similarly situated for purposes of joining an FLSA suit typically depends on whether they performed the same tasks and were subject to the same policies – as to both timekeeping and compensation – as the original plaintiffs were." *Clark*, 68 F.4th at 1010. Other factors courts consider relevant include "(1) the factual and employment settings of the individual plaintiffs, (2) the different defenses to which the plaintiffs may be subject, and (3) the degree of fairness and procedural impact of" facilitating notice. *Shanklin v. United Towing, Inc.*, No. 24-11097, 2025 WL 4945182, at *2 (E.D. Mich. Aug. 26, 2025) (quoting *Doe v. Coliseum, Inc.*, No. 20-cv-10845, 2023 WL 6420792, at *2 (E.D. Mich. Sept. 30, 2023)). Overall, courts look for whether the potential opt-in plaintiffs and the existing plaintiffs suffered from "a single, FLSA-violating policy or if their claims are unified by common theories of defendants' statutory violations, even if the proofs

of these theories are inevitably individualized and distinct." *Piddock v. Cmty. Living Network*, No. 22-cv-10715, 2024 WL 2235604, at *3 (E.D. Mich. May 15, 2024) (citation omitted). "At this stage, the court does not determine issues that go to the merits of the claim." *Id.* at *2.

Here, the Named Plaintiffs relied primarily on declarations from Kelly and five opt-in plaintiffs (together, the Declarants) to support their request for notice. (ECF No. 50, PageID.345; ECF No. 50-2; ECF No. 50-3). The Declarants worked at five different plants. (ECF No. 50-2, PageID.364–65; ECF No. 50-3, PageID.371, 377–78, 383–84, 389, 395, 400–01). The Declarants all stated the following in the declarations. First, that they had to clock in and out to keep track of their work hours, and that system was a "companywide policy or practice." (ECF No. 50-2, PageID.366; ECF No. 50-3, PageID.373, 379, 385, 391, 397, 402). Second, Autoneum knew that the Declarants and other hourly production and manufacturing employees performed work while clocked in but prior to the scheduled start and stop times of their shifts. (ECF No. 50-2, PageID.366–68; ECF No. 50-3, PageID.373–75, 380–81, 385–87, 391–93, 397–98, 403–04). Third, even though Autoneum recorded the exact time the Declarants clocked in and out each day, Autoneum did not pay for all of the time the Declarants were clocked in for. (ECF No. 50-2, PageID.366; ECF No. 50-3, PageID.373, 379–80, 385, 391, 397, 402–03). Fourth, the work performed prior to the start and stop time included meetings to receive

work assignments, relieving the previous worker operating the machine, or waiting to be relieved by the next worker. (ECF No. 50-2, PageID.366–67; ECF No. 50-3, PageID.373–74, 380, 385–86, 391–92, 397–98, 403–04).

Based on the similarities between the Declarants' statements, Named Plaintiffs argued that the Court should authorize notice. (ECF No. 50, PageID.347). They contended that the declarations demonstrated how Autoneum imposed a companywide policy across its plants through which it failed to pay the Declarants for all time worked. (*Id.* at PageID.357–58). As a result, there is a strong likelihood that other employees exist who have experienced the effects of this policy but have not opted in to the action. (*Id.* at PageID.342–43).

To prove that the six declarations are sufficient to establish that the potential opt-in plaintiffs are similarly situated, Named Plaintiffs stated that other district courts have facilitated notice on similar or thinner records. (ECF No. 50, PageID.357). And Plaintiffs are correct that declarations, without other evidence, can justify court-facilitated notice. *See Simpson v. Adena Health Sys.*, No. 2:23-cv-02633, 2024 WL 3418137, at *1–3 (S.D. Ohio July 15, 2024); *Murphy v. Kettering Adventist Healthcare*, 3:23-cv-69, 2023 WL 6536893, *4, *7 (S.D. Ohio Oct. 5, 2023). So the fact that Plaintiffs here pointed only to declarations in support of its argument is not dispositive of the outcome. Rather, it is the substance of the

declarations that falls short in attempting to establish an evidentiary basis for court-facilitated notice, at least when compared to evidence offered by Autoneum.

To begin, it is not clear that employees were subject to a companywide policy that intentionally miscalculated Plaintiffs' working hours. Each plant listed in the complaint used a different handbook or set calculation of work hours based on a collective bargaining agreement (CBA). (ECF No. 62-3, PageID.559; ECF No. 62-4, PageID.646–48; ECF No. 62-5, PageID.737–40, 748; ECF No. 62-6, PageID.776; ECF No. 62-7, PageID.978–80). Like *Woods v. First Transit, Inc.*, the employees here are "subject to different policies concerning how they report their time, how their schedules are set, [and] what time is paid" and each plant location is likewise "subject to a unique set of policies and procedures." No. 1:21-cv-739, 2023 WL 6290781, at *4 (N.D. Ohio Sept. 27, 2023). Because the Named Plaintiffs offered little evidence to rebut that each facility had its own system for calculating time worked, there is not a strong likelihood that the underpayment was attributable to a companywide policy such that opt-in plaintiffs are similarly situated.

Further, the Plaintiffs are subject to individualized defenses based on where they worked. As mentioned, the policies employed at the different facilities vary. For example, the amount of overtime the plaintiffs are entitled to is calculated in ways that would render recovery different for the plaintiffs involved. The CBAs also afford Autoneum a defense not available to non-CBA facilities in that the CBAs

set forth unique grievance procedures for Plaintiffs that must be followed. Ultimately, the availability of individualized defenses across plants cuts against court-facilitated notice.

Plus, many of the cases the Named Plaintiffs relied on involved more evidence than simply declarations. In *Balderas v. Norplas Industries, Inc.*, No. 3:24-cv-263, 2025 WL 2837584, at *3 (N.D. Ohio Oct. 2, 2025), the plaintiff offered testimony to show employees engaged in pre- and post-shift work, paystubs indicating the defendant "failed to include shift differentials and other bonuses in overtime calculations," a common timekeeping system and policy that defendant used across its facilities, and an employee handbook indicating the pre-shift work expected of employees. Although the facts here and those in *Balderas* both involve failure to compensate for pre- and post-shift work, the evidence in *Balderas* exceeds that presented by Plaintiffs. The same is true in other cases. *See Gudger v. CareCore Health, LLC*, No. 3:22-cv-239, 2025 WL 1311274, at *3 (S.D. Ohio May 6, 2025) (including declarations, representative pay statements, and handbooks as evidence); *Bunger v. Surge Staffing, LLC*, No. 2:23-cv-2113, 2024 WL 2858699, at *4 (S.D. Ohio June 6, 2024) (presenting declarations of eleven opt-in plaintiffs and the defendant's former regional senior vice president, pay stubs, and job descriptions for the positions at issue); *Isaacs v. Landmark Recovery of Louisville, LLC*, No. 3:23-cv-00210, 2023 WL 6096730, at *12 (M.D. Tenn. Sept. 18, 2023) (discussing

declarations, employee handbook, and revisions to employee handbook following a lawsuit); *Gifford v. Northwood Healthcare Grp., LLC*, No. 2:22-cv-4389, 2023 WL 5352509, at *1 (S.D. Ohio Aug. 21, 2023) (offering sworn declarations by plaintiff and opt-in plaintiffs in addition to employee handbooks).

In assessing the motion, the Court also considers the fairness of authorizing notice. Here, there are thousands of employees across six plants in four different states that would receive notice. (ECF No. 62-2, PageID.542; ECF No. 62-7, PageID.936, 940). In *Clark*, the Sixth Circuit identified "the decision to send notice of an FLSA suit to other employees" as a "dispositive one, in the sense of forcing a defendant to settle." 68 F.4th at 1007. That is, "because the issuance of notice can easily expand the plaintiffs' ranks a hundredfold," authorizing notice can effectively end the litigation before a decision is reached on the merits. *Id.* This idea, along with the fact that notice sent to employees who may not be eligible to join "amounts to solicitation of those employees to bring suits of their own," factored into the Sixth Circuit's development of the strong likelihood standard. *Id.* at 1010. Here, considering the impact notice might have on the ranks of this collective action, the Court finds that Named Plaintiffs need further evidence to show that potential opt-ins are similarly situated. To grant the motion, without more, would circumvent the intended purpose of the rule set forth in *Clark*.

Overall, the Court finds the evidence insufficient to grant the Named Plaintiffs' motion.

**B. The Named Plaintiffs' Evidence Suffers from Deficiencies that Impact its Effectiveness.**

There are also some notable deficiencies in the Named Plaintiffs' evidence that weigh against a finding of court-facilitated notice. To begin, two of the Declarants ended their employment over three years before the filing of the complaint. (ECF No. 50-3, PageID.371, 389). Accordingly, the claims fall outside of the notice period, and their declarations are not relevant for purposes of resolving the motion. That is, these Declarants cannot be considered similarly situated to potential opt-in plaintiffs who worked during the applicable time period. The Named Plaintiffs' cited case law is inapposite given that there was a question of fact about whether the declarant was terminated before or within the FLSA period. *Young v. I Love This Bar LLC*, No. 20-cv-3971, 2021 WL 1516203, at *4 (S.D. Ohio. Apr. 16, 2021). Those circumstances are not present here; the Declarants indicated in their declarations that their employment ended before the notice period began.

Additionally, one of the Declarants, Tyra Holmes, is an opt-in plaintiff in a different FLSA action. *See* Consent Form, *Lemke v. Autoneum North America, Inc.*, No. 3:23-cv-01308 (N.D. Ohio June 27, 2024), ECF No. 19. That FLSA action is based on similar claims against Autoneum arising from Autoneum's Oregon, Ohio

factory. *See* Complaint, *Lemke v. Autoneum North America, Inc.*, No. 3:23-cv-01308 (N.D. Ohio June 30, 2023), ECF No. 1. As a result, Holmes cannot participate as an opt-in plaintiff here and the Court cannot consider her declaration for purposes of deciding the motion. Although Autoneum challenged the Johnson declarations, whether those individuals are proper opt-in plaintiffs is not at issue and represents a question of fact inappropriate for resolution now.

Considering this, the Court only has four declarations across the six identified plants to rely on in support of the Named Plaintiffs' position. Granted, there is no minimum number of declarations needed to satisfy the strong likelihood standard. And of course, there is no "requirement that all locations or positions must be represented in an action, nor does case law provide a hardline threshold for the percentage of potential opt-in employees or employer locations that must be represented in Named Plaintiff's papers." *Simpson*, 2024 WL 3418137, at *3 (citation omitted).

But, as discussed, the declarations on their own are insufficient to meet the standard outlined by *Clark*. So the fact that only four are proper for consideration further weakens Plaintiffs' position. Without more, the Court is not persuaded that this practice was a pervasive companywide policy such that there is a strong likelihood similarly situated opt-in plaintiffs require notice. *See Woods*, 2023 WL 6290781 at *2 ("The only evidence of pre-trip and post-trip unpaid overtime and

automatically deducted meal breaks is presented in five self-serving declarations from the two named Plaintiffs and three opt-ins.”). For the reasons described, then, the Court will deny the Named Plaintiffs’ motion.

* * *

For the reasons given, the Court **ORDERS** that the motion for court-facilitated notice to potential opt-in plaintiffs (ECF No. 50) is **DENIED**.

Dated: September 4, 2026

s/Robert J. White
Robert J. White
United States District Judge